J-S64005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF ROSEMARIE STERCHAK, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: THOMAS DYNO AND JULIA DYNO | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2028 MDA 2016 |

Appeal from the Order Entered November 16, 2016
In the Court of Common Pleas of Susquehanna County
Orphans' Court at No(s):  OC068-2016

BEFORE:   PANELLA, J., SHOGAN, J., and FITZGERALD[*], J.

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 27, 2018**

Thomas and Julia Dyno, appeal *pro se* from the order entered in the Orphans' Court Division of the Susquehanna Court of Common Pleas, which denied their objections to the first and partial account of the Estate of Rosemarie Sterchak.[1] We affirm.[2]

---

[*] Former Justice specially assigned to the Superior Court.

[1] This is an appealable order. **See** Pa.R.A.P. 342, *Note* ("Subdivision (a)(1) provides that the adjudication of any account, even an interim or partial account, is appealable. Previously, only the adjudication of the final account would have been appealable as a final order under Rule 341. The prior limitation has proven unworkable for estate administration taking years and trusts established for generations during which interim and partial accounts may be adjudicated and confirmed.")

[2] Appellants filed a motion "Requesting Sanctions for Dilatory Vexation," which we summarily deny.

On October 20, 2015, Rosemarie Sterchak ("Decedent") died testate. Decedent's will provided that the bulk of the estate would be divided among specific beneficiaries. Appellants received specific bequests under Decedent's will. Further, Decedent provided that "in the case of specific devises and/or bequests, any inheritance tax due on said specific bequest shall be the responsibility of the residuary account as per Pennsylvania Statute." Decedent's Last Will and Testament, 4/14/08, at ¶ 7.

After the filing of a petition for grant of letters, Decedent's will was probated and Albert Dyno, Jr. ("Executor"), was appointed as executor of the estate. On May 24, 2016, the Executor sent a letter to the estate's specific beneficiaries, expressing his belief that the estate did not contain sufficient liquid funds to meet its expenses. In order to meet these obligations, the Executor requested the specific beneficiaries allow him to dissolve a portion of their specifically devised gifts under the will, the amount of which was calculated as their *pro rata* portion of the estate's remaining obligations.

Upon receiving this request, Appellants filed a petition for inventory and accounting of the estate. The Executor agreed to Appellants' request, and filed the estate's first inventory and accounting on September 16, 2016. The Executor indicated the estate was valued at approximately $1,562,172.82 at the time of Decedent's death. However, after paying $211,000 in inheritance taxes and various other expenses, the total principal value of the estate at the time of the accounting amounted to $1,342,376.42. Simultaneously, although the Executor did not request an immediate distribution of the estate's assets,

he requested that in the event distribution was ordered, the court create a $100,000 reserve to address any contingencies.

In response to the estate's filing of the inventory and accounting, Appellants moved for summary judgment. Through this novel motion, Appellants alleged the Executor acted fraudulently by failing to file a final account with all calculations included, asking beneficiaries for more than their *pro rata* share of the inheritance tax burden in violation of 72 P.S. § 9144, and by inappropriately asking to reserve $100,000 of the specific beneficiaries' grants under the will.

The Executor denied Appellants' allegations and clarified that the estate's accountant calculated the residuary estate, prior to the payment of inheritance taxes, to contain only $142,224.01. Therefore, because the inheritance taxes approximated $211,000 and the remaining administrative expenses, including attorney's fees, accountant's fees, and the Executor's commission, approximated $114,329.32, the Executor reiterated the need to obtain the beneficiaries' *pro rata* share of the expenses remaining after the exhaustion of the residuary estate.

The orphans' court treated Appellants' motion as objections to the Executor's accounting and scheduled a hearing on the objections. At the hearing, Appellants presented argument in support of their objections, but failed to introduce *any* evidence, aside from their motion, in support of their allegations. The orphans' court entered an order overruling Appellants' objections, lifting a previous provision which restricted the Executor from

selling any of Appellants' stocks in satisfaction of the Estate's obligations,[3] and granting the Executor's request to create a reserve. This appeal follows.

On appeal, Appellants raise four issues:

1. Did the Executor violate 72 P.S. 9144?

2. Did the court wrongfully dissolve injunctive relief?[4]

3. Did the court violate the clean hands doctrine by granting relief?

4. Did the court deprive [Appellants] of a full and fair due process hearing?

Appellants' Brief, at 5-6.[5]

---

[3] Appellants improperly conflate the trial court's ruling allowing the Executor to sell their stock with a dissolution of injunctive relief.

[4] On January 13, 2017, Appellants asked this Court to stay the provision in the November 15, 2016 order on appeal that allowed the Executor to sell their specifically devised stocks. *See* Application for Supersedeas, 1/13/17. As an appellant must first seek a stay with the lower court, we denied Appellants' motion without prejudice to Appellants' ability to seek relief in the orphans' court. *See* Order, 1/27/17; *see also* Pa.R.A.P. 1732(a). Appellant filed for such relief with the orphans' court, and on March 27, 2017, the orphans' court granted Appellants' request and prohibited the Executor from selling Appellants' stocks until the resolution of the appeal. *See* Order, 3/27/17, at ¶2. This ruling effectively places Appellants' "injunctive relief" back into place, and renders their second issue on appeal moot.

[5] Appellants' brief, while substantially in compliance with the form required, often flouts the rules prescribed concerning the contents of an appellate brief. For example, in direct contravention to Pa.R.A.P. 2117(b), Appellants' statement of the case is best described as a rambling attack on the actions of both the Executor and the orphans' court. There are further issues, which we need not catalog here. The interested reader can simply read Appellants' brief to see them.

If the defects in a brief "impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be

Our standard in reviewing decisions of the orphans' court is as follows:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

When the trial court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, [it had been] charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence [of] record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.

We are not constrained to give the same level of deference to the orphans' court's resulting legal conclusions as we are to its credibility determinations. We will reverse any decree based on palpably wrong or clearly inapplicable rules of law. Moreover, we are not bound by the chancellor's findings of fact if there has been an abuse of discretion, a capricious disregard of evidence, or a lack of evidentiary support on the record. If the lack of evidentiary

_____

waived." **_Commonwealth v. Hardy_**, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted). While Appellants' brief certainly does not adhere to the aforementioned rules, it does not hamper our ability to conduct meaningful review. Thus, while we do not condone their use of the appellate brief to attack the Executor, we shall review the issues Appellants raised.

support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Paxson Trust I*, 893 A.2d 99, 112-113 (Pa. Super. 2006) (internal citations and quotation marks omitted).

Preliminarily, we note with displeasure that the orphans' court failed to author a Rule 1925(a) opinion. In fact, frustratingly, nowhere in the record does Judge Legg provide any statement of reasons for his decision.

Our rules of appellate procedure require a lower court to file a 1925(a) opinion that sets forth the reasons for its ruling. *See* Pa.R.A.P. 1925(a). "The purpose of this rule is to provide the appellate court with a statement of reasons for the order entered in order to permit effective and meaningful review of the lower court decisions." *Commonwealth v. Hood*, 872 A.2d 175, 178 (Pa. Super. 2005) (citation omitted).

The lack of an opinion has needlessly complicated resolution of this appeal, but it is not fatal to our review. After reviewing the record, we conclude that the notes of testimony from November 15, 2016 provides sufficient insight into the orphans' court's reasoning in relation to Appellants' issues. Therefore, we decline to remand for preparation of a 1925(a) opinion, and proceed to the merits of Appellants' appeal.

Appellants first contend the orphans' court erred by failing to recognize that the Executor violated both the will's tax clause and 72 P.S. § 9144, **Source of payment**. Appellants argue the Executor's failure to exhaust the residuary account prior to asking specific beneficiaries to consent to dissolving a *pro rata* share of their stocks to cover the inheritance taxes. This, Appellants assert, violates § 9144, which provides that inheritance taxes shall be paid out of the residuary estate.

Conversely, the estate asserts that it *did* utilize the available residuary funds to pay inheritance taxes, but that the residuary was insufficient to cover the total amount of inheritance taxes and administrative expenses. Thus, the estate was required to the use of portions of the specific bequests to meet these obligations.

Pursuant to Pennsylvania law,[6]

> unless the will provides otherwise, inheritance tax on specific bequests shall be paid out of the residuary estate and charged in the same manner as a general administration expense of the estate. The administration expenses are to be paid in full prior to paying other expenses and prior to distribution to beneficiaries. 20 Pa.C.S. § 3392. In contrast, unless the will provides otherwise, the beneficiaries of the residuary estate and non-probate assets must pay the inheritance tax liability for their portion of the residuary estate.

---

[6] Neither Appellants nor the estate dispute that the phrasing of Decedent's inheritance tax clause evidenced her intent to have § 9144 govern the apportionment of inheritance taxes. Thus, we do not need to examine Decedent's intent prior to analyzing the Executor's adherence to this statute.

***In re Estate of Davis***, 128 A.3d 819, 821-822 (Pa. Super. 2015) (footnote omitted).

Here, Appellants are correct that § 9144 requires inheritance tax to be paid from the residuary. However, the statute does not require the Executor exhaust the residuary prior to approaching the specific beneficiaries to ask for permission to dissolve their *pro rata* share of the anticipated expenses. Additionally, Appellants inappropriately characterize the Executor's request as one to cover solely inheritance taxes; in fact, the Executor requested permission to dissolve a *pro rata* share of each specific beneficiaries' stock to cover *all* estate obligations.

The evidence presented by the Executor shows that the estate's obligations exceed the amount in the residuary account. Appellants failed to present *any* evidence at the hearing in support of their contention that the Executor is not planning to account for the inheritance taxes using the residuary estate. Thus, we find no reason to conclude that the Executor violated § 9144. As such, Appellants' first issue on appeal fails.

As framed in their next issue on appeal, Appellants assert the orphans' court violated the clean hands doctrine. Appellants seem to argue that by supporting what they allege are the fraudulent activities of the Executor and chastising Appellants' unsupported claims, the orphans' court violated the clean hands doctrine. This claim is patently frivolous. Only *parties* to a suit are

subject to the doctrine of unclean hands. ***See In re Estate of Pedrick***, 482 A.2d 215, 222-223 (Pa. 1984).

Finally, Appellants argue the trial court deprived them of a full and fair hearing concerning their objections to the Executor's first accounting. We find Appellants waived this claim by failing to present any relevant statutory authority to support their argument. ***See In re Estate of Whitley***, 50 A.3d 203, 209 (Pa. Super. 2012) ("Failure to cite relevant legal authority constitutes waiver of the claim on appeal.")

Even if Appellants properly preserved this issue, the record plainly belies their contention. Following Appellants' filing of a motion for summary judgment, the orphans' court scheduled a hearing on what it considered Appellants' "objections" to the estate's first accounting. The orphans' court provided notice to the parties of this hearing. Appellants never objected to the court's treatment of its motion as objections to the accounting. On the day provided for Appellants to present evidence supporting their objections, Appellants chose not to present any *evidence*; they relied on *argument*.

We can find no *evidence* of record supporting Appellants' baseless claim the orphans' court denied them a full and fair hearing. Thus, Appellants' last issue on appeal fails.

Order affirmed. Motion denied.

Justice Fitzgerald did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2018